UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ELVAN MOORE,

        Plaintiff,

v.                                          Case No:  6:13-cv-224-Orl-31GJK

DONALD F. ESLINGER and KEVIN
PEDERSON,

        Defendants.

## ORDER

This matter comes before the Court on the Motion to Dismiss (Doc. 10) filed by the Defendants, Donald Eslinger ("Eslinger") and Kevin Pederson ("Pederson"), and the response in opposition (Doc. 18) filed by the Plaintiff, Elvan Moore ("Moore").

**I.    Background**

Eslinger is the Sheriff of Seminole County. He is being sued in his official capacity. Pederson, a Seminole County Deputy Sheriff, is being sued in his individual capacity.[1] In the early morning hours of November 15, 2008, Pederson responded to a noise complaint about an argument in an apartment complex. According to the pertinent allegations of the Plaintiff's Complaint (Doc. 2), which are accepted as true for purposes of resolving the instant motion, Pederson eventually arrested Moore "for the offense [of] resisting officer without violence based upon his alleged refusal to give basic or biographical information for deputy to complete a report."

---

[1] Moore has also sued Pederson in his "official capacity as a law enforcement officer for Seminole County, Florida." (Complaint at 3). Claims against Pederson in this capacity are duplicative of the claims against Eslinger in his official capacity and will therefore be dismissed. *See Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991).

(Complaint at 3).  Moore also alleges that when he encountered Pederson he was wearing only a towel, that the towel fell off while he was being arrested, and that Pederson refused to allow him to clothe himself.  (Complaint at 5).  Moore alleges that he was transported to the Seminole County Jail and booked while naked, and that he was "obviously embarrassed and humiliated by the actions of Deputy Pederson."  (Complaint at 5).

Beyond this, it is difficult to ascertain Moore's version of the events of that night.  The section of Moore's Complaint titled "Facts Regarding the Unlawful Arrest" includes numerous references to what Pederson claims to have occurred – *e.g.*, "The Deputy alleges in his report that he asked the Plaintiff his name and that the Plaintiff refused to comply and in addition, stated that Deputy Pederson would have to call his attorney."  (Complaint at 4).  Conspicuously absent, however, are Moore's claims as to what occurred -- such as, for example, a denial that Pederson asked for his name or that he refused to give it.  Presumably, Moore disputes at least some portions of the narrative set forth in Pederson's police report from that night, which is attached as an exhibit to the Complaint.  (Not surprisingly, Pederson's report does not describe Pederson doing anything unlawful or violating Moore's rights.)  However, aside from describing the alleged basis of his arrest and the situation involving the towel, Moore does not set forth his recollection.[2]

On October 19, 2012, Moore filed the instant suit in state court, alleging that Pederson and Eslinger committed numerous violations of state and federal law in arresting him.  On February 8, 2013, the Defendants removed this case to federal court.  By way of the instant motion, the Defendants seek dismissal of all of the claims against them.

---

[2] Moore does assert (and the Defendants do not dispute) that the State Attorney's Office dropped the charge against him on December 12, 2008.

## II.     Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," so as to give the defendant fair notice of what the claim is and the grounds upon which it rests, *Conley v. Gibson*, 35 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), *overruled on other grounds*, *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  A Rule 12(b)(6) motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case. *Milbum v. United States*, 734 F.2d 762, 765 (11th Cir.1984).  In ruling on a motion to dismiss, the Court must accept the factual allegations as true and construe the complaint in the light most favorable to the plaintiff.  *SEC v. ESM Group, Inc.*, 835 F.2d 270, 272 (11th Cir.1988).  The Court must also limit its consideration to the pleadings and any exhibits attached thereto. FED. R. CIV. P. 10(c); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993).

The plaintiff must provide enough factual allegations to raise a right to relief above the speculative level, *Twombly,* 550 U.S. at 555, 127 S.Ct. at 1966, and to indicate the presence of the required elements, *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1302 (11th Cir.2007).  Conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal.  *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), the Supreme Court explained that a complaint need not contain detailed factual allegations, "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. . . . A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. at 1949 (internal citations omitted). "[W]here the well-pleaded facts do not permit the court to

infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the plaintiff is entitled to relief.'" *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

**III.   Analysis**

Before turning to the substantive analysis, the Court notes that Count I is denominated as a claim under 42 U.S.C. § 1983 for "Invasion of Privacy in Violation of Fourth and Fourteenth Amendments."   (Complaint at 6).  However, both parties treat Count I as a claim for unreasonable seizure rather than an invasion of privacy claim.  The Court will follow their lead.  In addition, Moore agrees with the Defendants that Counts VII and VIII are redundant of other counts in the complaint, and he does not object to their dismissal.  (Doc. 18 at 8).  Finally, Moore agrees that his claim for intentional infliction of emotional distress (Count XI) should be dismissed as to Sheriff Eslinger.

A.   Federal claims against Eslinger/Seminole County

Moore brings suit under 42 U.S.C. §1983 against Eslinger in his official capacity for unreasonable seizure (Count I); malicious prosecution (Count II); "Policy, Practice or Procedure" (Count III); and failure to train or supervise (Count IV).  Official-capacity claims against a municipal officer under Section 1983 are simply another way of pleading an action against an entity of which the officer is an agent. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).  Thus the claims against Sheriff Eslinger in the first four counts are understood to be claims against Seminole County.

To hold a governmental entity such as Seminole County liable for a Section 1983 violation, a plaintiff cannot rely on the doctrine of *respondeat superior* but must instead show that the entity itself caused the violation at issue. *Skop v. City of Atlanta*, 485 F.3d 1130, 114 (11th Cir. 2007).  To impose Section 1983 liability on Seminole County, Moore must show that one of

his Constitutional rights was violated, that Seminole County had a custom or policy that constituted deliberate indifference to that right, and that the policy or custom caused the violation. *See, e.g.*, *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). This policy or custom can take one of three forms: (1) an express policy; (2) a widespread practice that is so well-settled and permanent as to constitute a custom; or (3) the act or decision of an official with final policymaking authority. *See Hargis v. City of Orlando*, 2012 WL 6089715 at *5 (M.D.Fla. Dec. 7, 2012).

In Counts I and II, Moore does not even allege that such a custom or policy exists. Thus, those counts will be dismissed as to Eslinger/the County. In Count III, Moore asserts that the County

> has a policy, practice and/or custom which:
>
> a.   Permits, encourages, and praises the unlawful arrest of private citizens without sufficient probable cause; and
>
> b.   Fails to adequately train and/or supervise City of Orlando [sic] employees to prevent the unlawful arrest of private citizens without probable cause.

(Complaint at 8). Even if one substitutes "Seminole County" for "City of Orlando," this conclusory allegation, alone, is not enough to state a claim for municipal liability under Section 1983. Similarly, in Count IV, Moore asserts that the County and Eslinger "failed to adequately train and/or supervise the Defendants' employees in what is required to establish probable cause to arrest and how to arrest without causing embarrassment and humiliation" and that the need for such supervision and training "was plainly obvious or should have been plainly obvious" to them. (Complaint at 10). As with Count III, this formulaic recitation of the elements of a cause of action is not enough to state a claim. Therefore, the first four counts of the Complaint will be dismissed without prejudice as to Sheriff Eslinger.

B.  Count I – Illegal Seizure under Section 1983 – as to Pederson

Pederson contends that the Fourth Amendment claim against him in Count I should be dismissed because his report, which was attached by Moore to the Complaint, shows that he had probable cause to make an arrest. It is true that the existence of probable cause would bar Moore's Fourth Amendment claim. *See Marx v. Gumbinner*, 905 F.2d 1503, 1505 (11th Cir. 1990). However, the allegations of the Complaint itself, taken as true, do not show that Pederson had probable cause to make an arrest. And Pederson has not shown that Moore intended to adopt the version of the night's events set forth in the attached arrest report. Pederson argues that, according to Federal Rule of Civil Procedure 10(c), "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." But it appears unlikely that Pederson's police report would fall within the category of "written instruments" that can become part of a pleading under Rule 10(c). Typically, that category is limited to contracts, notes, and other such writings on which a party's claim is based. *See Rose v. Bartle*, 871 F.2d 331, 349 n.3 (3d Cir. 1989). Even if the police report would qualify as a written instrument for purposes of Rule 10(c), at most this would mean that the Court could consider it for purposes of a Rule 12 motion to dismiss (rather than having to convert the motion to one under Rule 56 for summary judgment). *Id.* Accordingly, the Court concludes that the allegations of the Complaint do not show that Pederson had probable cause (or even arguable probable cause), and Count I will not be dismissed as to this Defendant.

C.  Count V and Count VI – state law false arrest claims against Eslinger and Pederson, respectively

Also based on the attached police report, the Defendants argue that the state law false arrest claims against them should be dismissed because the Complaint shows that Pederson had

probable cause to make an arrest.  That argument fails here for the same reason it failed in regard to Count I.

In both Count V and Count VI Moore contends that, in making the arrest, Pederson acted "in bad faith, and with willful disregard of the human rights, safety and property of the Plaintiff." (Complaint at 12).  Under Florida law, no officer, employee or agent of the state or one of its subdivisions can be held personally liable in tort unless he or she acted outside the scope of his or her employment or acted "in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property."  Fla. Stat. § 768.28(9)(a).  Pederson argues that Moore's statement is simply conclusory, and that Moore has not supplied any support for it.  However, Moore points out that he has alleged that Pederson arrested him without probable cause and forced him to travel naked to the jail to be booked.  At this stage of the proceedings, such allegations are sufficient to proceed against Pederson individually.  Count VI will not be dismissed as to Pederson.

However, that same statute provides that

> The state or its subdivisions shall not be liable in tort for the acts or omissions of an officer, employee, or agent … committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

Fla. Stat. § 768.28(a).  Thus, Sheriff Eslinger in his official capacity is immune as to the claim set forth in Count V, which will be dismissed as to him.

D.      <u>Count IX and X – Malicious Prosecution under state law as to Eslinger and Pederson, respectively</u>

> Under Florida law, a plaintiff must establish each of six elements to support a claim of malicious prosecution: (1) an original judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the

> present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damages as a result of the original proceeding. *Durkin v. Davis*, 814 So.2d 1246, 1248 (Fla.Dist.Ct.App.2002) (citing *Burns v. GCC Beverages, Inc.*, 502 So.2d 1217 (Fla.1986)).

*Kingsland v. City of Miami*, 382 F.3d 1220, 1234 (11th Cir. 2004). Without conceding any of the other elements, the Defendants argue that the state law malicious prosecution claims against them in Counts IX and X should be dismissed because they were not the legal cause of the original proceeding.[3]

In the case of a warrantless arrest, the "judicial proceeding" does not begin until the defendant is arraigned or indicted. *Kingsland* at 1235. Defendant police officers may be the legal cause of the judicial proceeding where it is shown that they had something to do with the decision to prosecute or improperly influenced that decision. *Williams v. Miami-Dade Police Dept.*, 297 Fed.Appx. 941, 946 (11th Cir. 2008). In his response to the instant motion, Moore argues that Pederson was the legal cause of the proceeding because he arrested him without probable cause and forwarded the case to the state attorney's office recommending prosecution. (Doc. 18 at 9). Even if this allegation was included in the Complaint, which it is not, it would not show that Pederson had enough influence over the decision to prosecute as to be the legal cause of the original proceeding. Counts IX and X will be dismissed.

    E.    <u>Count XI -- Intentional Infliction of Emotional Distress</u>

In *Metropolitan Life Ins. Co. v. McCarson*, 467 So.2d 277 (Fla.1985), the Florida Supreme Court recognized the tort of intentional infliction of emotional distress, and adopted the standard of Section 46, Restatement (Second) of Torts as the appropriate benchmark for the cause of action.

---

[3] Pederson also argues that the federal malicious prosecution claim asserted against him in Count II should be dismissed, but that argument is moot because Count II was not asserted against him in his individual capacity.

*Id.* at 278–79. As described by the *McCarson* court, the comment to section 46 adds the following "familiar gloss" to this definition:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

*Metropolitan Life Ins. Co.*, 467 So. 2d at 278-79.

The question of what constitutes outrageous conduct is judged by an objective test, and is ordinarily one of law to be resolved by a court rather than a question of fact to be resolved by a jury. *Dependable Life Ins. Co. v. Harris*, 510 So. 2d 985, 988 (Fla. 5th DCA 1987). On this scant record, the Court finds that forcing the Plaintiff to travel to jail and be booked while naked could conceivably support a claim for intentional infliction of emotional distress. Accordingly, this count will not be dismissed as to Defendant Pederson.

### IV.   Conclusion

In consideration of the foregoing, it is hereby

**ORDERED** that the Motion to Dismiss (Doc. 10) is **GRANTED IN PART AND DENIED IN PART**. Count I is dismissed without prejudice as to Defendant Eslinger, only. Counts II through IV are dismissed without prejudice. Count V is dismissed with prejudice. Counts VII and VIII are dismissed with prejudice. Counts IX and X are dismissed without prejudice. And Count XI is dismissed with prejudice as to Defendant Eslinger.

**DONE** and **ORDERED** in Orlando, Florida on April 26, 2013.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties