UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**ELVAN MOORE,**

                       **Plaintiff,**

**v.**                                                    **Case No:  6:13-cv-224-Orl-31GJK**

**SEMINOLE COUNTY, FLORIDA,**
**DONALD F. ESLINGER and KEVIN**
**PEDERSON,**

                       **Defendants.**

_____/

**ORDER**

      This matter comes before the Court on the Motion for Summary Judgment (Doc. 42) filed

by Defendant Kevin Pederson ("Pederson"); the response in opposition (Doc. 54) filed by the

Plaintiff, Elvan Moore ("Moore"); and the reply (Doc. 58) filed by Pederson.  Additionally, this

cause is before the Court on the Motion for Summary Judgment (Doc. 52) filed by Moore, the

response in opposition (Doc. 56) filed by Pederson, and the reply (Doc. 59) filed by Moore.

**I.**      **Background[1]**

      During the early morning hours of November 15, 2008, the Seminole County Sheriff's

Office received a call regarding a disturbance taking place in an apartment complex.  (Doc. 46,

Ex. A).  The complainant told the dispatcher that a male and two females were yelling at each

other in the parking lot.[2]  (Doc. 46, Ex. A).  Shortly thereafter, Pederson was dispatched and arrived

---

[1] Except where noted, the following facts are undisputed.

[2] Moore disputes this allegation solely on the grounds of hearsay.  However, the statement
made by the complainant is not being used to prove the truth of the matter asserted – *i.e.*, that an
altercation took place in the parking lot.  Rather, the statement is being used to show why Pederson

at the apartment complex where the disturbance was alleged to have occurred.  (Doc. 46, Ex. A). Pederson met with the complainant, who told him that a male and two females had been yelling in the parking lot and that a white car had left the area with screeching tires.  (Doc. 43 at 9).  The complainant also told Pederson that the individuals involved in the disturbance had gone inside an apartment before Pederson had arrived.  (Doc. 43 at 9).  The complainant directed Pederson to the apartment.  (Doc. 43 at 9).

Pederson alleges that when he approached the apartment, he heard arguing coming from inside.  (Doc. 43 at 9).  Pederson also alleges that he heard loud music coming from the apartment, though Moore disputes this.  (Doc. 43 at 9, Doc. 54 at 3).  Pederson knocked on the door, and Moore answered.  (Doc. 43 at 10).

When Moore answered the door, he was dressed only in a towel, which he was wearing around his waist.  (Doc. 43 at 10).  Through the open doorway, Pederson observed two women in the apartment -- one black and one white.  (Doc. 43 at 10).  The black woman was clothed, while the white woman was naked.  (Doc. 43 at 10).  According to Pederson, the white woman appeared to be intoxicated, while the black woman appeared to be angry, although Pederson could not determine what she was angry about.  (Doc. 43 at 11).

Though Pederson contends that Moore was standing outside his apartment when their encounter occurred, Doc. 43 at 18, Moore asserts that he was inside, standing on a landing, Doc. 50 at 149.  For purposes of resolving Pederson's motion, the Court will accept Moore's assertion on this point.

---

was dispatched to the apartment complex.  *See United States v. Maestre-Polo*, 2014 WL 688000 (M.D. Fla. Feb. 21, 2014) (explaining the difference between hearsay and non-hearsay).

Moore alleges that as soon as he came to the door, Pederson accused him of having been "out … fighting women in the street" and demanded that he provide his I.D.  (Doc. 50 at 132). Moore asserts that he did not understand what fight Pederson was referring to and attempted to obtain more information.  (Doc. 50 at 132).  According to Moore, Pederson repeated the allegation that he had been fighting in the street and again demanded his I.D.  (Doc. 50 at 132).  Still confused, Moore says, he then asked Pederson, "What are you talking about?  Who are you?" (Doc. 50 at 133).  According to Moore, Pederson told him that he needed to see his I.D. and that if he continued to refuse to provide it, he would be going to jail.  (Doc. 50 at 132).   Moore says he again asked Pederson, "Who are you?  What is this about?"  (Doc. 50 at 133).  According to Moore, Pederson responded by arresting him -- telling him to turn around and put his hands behind his back.  (Doc. 50 at 133).

Moore was charged with resisting an officer without violence, based on his refusal to provide his biographical information.  (Doc. 43 at 24).  On December 12, 2008, the State of Florida nolle prossed the charges against Moore.  (Doc. 2-2 at 18).  Thereafter, Moore filed numerous claims against Seminole County, Seminole County Sheriff Donald R. Eslinger, and Pederson. (Doc. 2).  After resolution of multiple motions to dismiss, the only claims that remain are against Pederson in his individual capacity.  (Docs. 26, 35).  The claims against Pederson are as follows: a false arrest claim under 42 U.S.C. § 1983 ("Section 1983") (Count I); a state law claim for false arrest (Count III); a state law claim for malicious prosecution (Count V); and a state law claim for intentional infliction of emotional distress (Count VI).  (Doc. 27).  Pederson has filed a motion for summary judgment as to all remaining counts.  (Doc. 42).  Moore seeks summary judgment solely as to Count I.  (Doc. 52).

II.     **Standards**

**A. Summary Judgment**

A party is entitled to summary judgment when it can show that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56; *Beal v. Paramount Pictures Corp.,* 20 F.3d 454, 458 (11th Cir. 1994).  The moving party bears the burden of showing that no genuine issue of material fact exists.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  In determining whether the moving party has satisfied its burden, the court considers all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolves all reasonable doubts against the moving party.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  *Celotex Corp.,* 477 U.S. at 324–25 (internal quotations and citations omitted). Thereafter, summary judgment is mandated against the non-moving party who fails to make a showing sufficient to establish a genuine issue of fact for trial.  *Id.* at 322, 324–25.  The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts.  *Evers v. Gen. Motors Corp.,* 770 F.2d 984, 986 (11th Cir. 1985).

**B.     Qualified immunity**

Qualified immunity permits a government official to perform a "discretionary duty without the fear of personal liability or harassing litigation" and protects "from suit all but the plainly incompetent". *Gonzalez v. Reno,* 325 F.3d 1228, 1233 (11th Cir. 2003). If an act occurs within the

defendant's discretionary function, the plaintiff bears the burden of overcoming qualified immunity. *See Rushing v. Parker,* 599 F.3d 1263, 1265 (11th Cir. 2010). A plaintiff defeats qualified immunity by showing that the officer's conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Vineyard v. Wilson,* 311 F.3d 1340, 1346 (11th Cir. 2002).

### C. False Arrest

An individual has a constitutional right to be free from "unreasonable searches and seizures". U.S. Const. amend. IV. An arrest qualifies as a seizure of a person. *Case v. Eslinger,* 555 F.3d 1317, 1326 (11th Cir. 2009) (citations omitted). The reasonableness of an arrest depends on whether probable cause existed to make the arrest. *Id.* at 1326. An arrest without probable cause violates the Constitution and provides a basis for a Section 1983 claim, but the existence of probable cause at the time of arrest is an absolute bar to a subsequent constitutional challenge to the arrest. *Brown v. City of Huntsville, Ala.,* 608 F.3d 724, 734 (11th Cir. 2010) (citation omitted). An officer has probable cause to arrest when the arrest is objectively reasonable based on the totality of the circumstances. *Coffin v. Brandau,* 642 F.3d 999, 1006 (11th Cir. 2011). "This standard is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense."[3] *Coffin,* 642 F.3d at 1006–07 (quoting *Kingsland,* 382 F.3d at 1232). Whether a particular set of facts gives rise to probable cause for arrest depends on the elements of the crime. *Crosby v. Monroe County,* 394 F.3d 1328, 1333 (11th Cir. 2004). Where the facts are

---

[3] The standard for determining probable cause is the same under both state and federal law. *Rankin v. Evans,* 133 F.3d 1425, 1435–36 (11th Cir.1998)

Case 6:13-cv-00224-GAP-GJK   Document 67   Filed 08/29/14   Page 6 of 14 PageID 1226


undisputed, whether probable cause existed is a question of law. *Marx v. Gumbinner,* 905 F.2d 1503, 1506 (11th Cir. 1990).

## III.    ANALYSIS

### A.    Pederson's Motion as to Moore's Section 1983 Claim

Pederson arrested Moore pursuant to Fla. Stat. § 843.02.  To support a conviction under Section 843.02, the state must show that "(1) the officer was engaged in the lawful execution of a legal duty; and (2) the action by the defendant constituted obstruction or resistance of that lawful duty." *R.E.D. v. State*, 903 So.2d 206, 207 (Fla. 3d DCA 2004).[4]

In *Popple v. State*, 626 So.2d 185 (Fla. 1993), the Florida Supreme Court summarized the three possible levels of a police-citizen encounter:

> The first level is considered a consensual encounter and involves only minimal police contact.  During a consensual encounter a citizen may either voluntarily comply with a police officer's requests or choose to ignore them.  Because the citizen is free to leave during a consensual encounter, constitutional safeguards are not invoked.  *United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980).

> The second level of police-citizen encounters involves an investigatory stop as enunciated in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).  At this level, a police officer may reasonably detain a citizen temporarily if the officer has a reasonable suspicion that a person has committed, is committing, or is about to commit a crime. § 901.151 Fla. Stat. (1991).  In order not to violate a citizen's Fourth Amendment rights, an investigatory stop requires a well-founded, articulable suspicion of criminal activity.  Mere suspicion is not enough to support a stop.  *Carter v. State*, 454 So.2d 739 (Fla. 2d DCA 1984) ....

> [T]he third level of police-citizen encounters involves an arrest which must be supported by probable cause that a crime has been or is being committed.  *Henry v. United States*, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959); § 901.15 Fla.Stat. (1991).

---

[4] Florida courts have generally held, with very limited exceptions, that physical conduct must accompany offensive words to support a conviction under Section 843.02. *D.G. v. State,* 661 So.2d 75, 76 (Fla. 2d DCA 1995).  However, words alone may constitute obstruction if an officer is legally detaining a person. *Id.*

6

*Id.* at 186.  The United States Supreme Court has held that, consistent with the Fourth Amendment, a state may require a suspect, on pain of arrest, to disclose his or her name during a *Terry* stop. *Hiibel v. Sixth Judicial Dist. Court of Nevada, Humboldt* County, 542 U.S. 177, 187 (2004). Moore contends that Pederson lacked probable cause to arrest him for obstruction because their encounter was only a consensual one, and thus he was not obligated to comply with Pederson's demand for his identification.  (Doc. 54 at 8-11).  Pederson argues that he had probable cause to arrest Moore for obstruction because Moore failed to provide his identification during a valid *Terry* stop.  (Doc. 58 at 4).

It is well established that law enforcement may detain a person "if they have a reasonable, articulable suspicion based on objective facts that the person has engaged, or is about to engage, in criminal activity." *United States v. Diaz–Lizaraza*, 981 F.2d 1216, 1220 (11th Cir. 1993) (citing *Terry v. Ohio*, 392 U.S. 1 (1968)).  Reasonable suspicion requires something more than a mere hunch, but less than the level of suspicion required for probable cause.  *United States v. Sokolow*, 490 U.S. 1, 7 (1989).  When evaluating whether there is reasonable suspicion, the totality of the circumstances must be taken into account.  *United States v. Cortez,* 449 U.S. 411, 417 (1981).  If law enforcement has reasonable suspicion to believe that a person has committed a criminal offense, the police are permitted to "ask questions, or check identification in the absence of probable cause."

When considering the totality of the circumstances -- the information provided by the complainant, the complainant's directing Pederson to Moore's apartment, and Pederson's observations of the apartment's occupants when Moore opened the door -- Pederson's suspicion that Moore had been engaged in the disturbance outside was reasonable.  Nonetheless, Pederson's reasonable suspicion was insufficient to support a *Terry* stop here.

The Fourth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment, provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable. *Payton v. New York*, 445 U.S. 573, 586 (1980).  "In terms that apply equally to seizures of property and seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house.  Absent exigent circumstances, the threshold may not reasonably be crossed without a warrant."  *Id.* at 590.

Because of the "respect traditionally accorded to the sanctity of the home, an interest embedded in our traditions since the origins of the Republic," *id.* at 601, circumstances that would justify an investigatory detention of an individual on a public street will not justify such a detention within that individual's residence.  Simply stated, "*Terry* does not apply *inside* a home."  *United States v. Crapser*, 472 F.3d 1141, 1129 (9th Cir. 2007) (citing cases) (emphasis in original).  *See also United States v. Saari,* 272 F.3d 804, 809 (6th Cir. 2001) (explaining that, absent exigent circumstances, warrantless seizures of persons in their homes violate the Fourth Amendment, regardless of whether the officers at issue were conducting an arrest or an investigatory detention).  *And see Engel v. State*, 391 So. 2d 245, 247 (Fla. 5th DCA 1980) (holding that neither *Terry* nor Fla. Stat. § 901.151, which authorizes temporary detentions by police officers to determine identity, applies inside a person's residence).

Viewing the evidence in the light most favorable to Moore, the encounter occurred inside Moore's home, where *Terry* does not apply.  In the absence of a valid *Terry* stop, Pederson could

not compel Moore to provide I.D., and therefore Moore's failure to do so did not provide Pederson with probable cause to make an arrest -- under Fla. Stat. § 843.02 or otherwise.

Pederson argues that even if he lacked probable cause to arrest Moore, he is entitled to qualified immunity.  (Doc. 42 at 14-17).  It is undisputed that Pederson was working within his discretionary authority as a deputy sheriff during the events at issue.  Thus, the burden shifts to the Plaintiff to show that qualified immunity is not appropriate.  *Rushing,* 599 F.3d at 1265.  To determine whether a law enforcement official is entitled to qualified immunity, the court must determine whether the officer's conduct violates a "clearly established statutory or constitutional rights of which a reasonable person would have known."  *Vineyard v. Wilson,* 311 F.3d 1340, 1346 (11th Cir. 2002).

When case law is needed to "clearly establish" the law applicable to the pertinent circumstances, courts within this circuit are to look to "decisions of the U.S. Supreme Court, the United States Court of Appeals for the Eleventh Circuit, and the highest court of the pertinent state."  *Marsh v. Butler County*, 268 F.3d 1014, 1032 n.10 (11th Cir. 2001), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  "[I]f case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant."  *Smith v. Mattox,* 127 F.3d 1416, 1419 (11th Cir.1997) (internal quotations omitted).

Beyond a general invocation of the Fourth Amendment standard, Moore provides no closely analogous case law to the case at hand – *i.e.*, a situation in which an officer attempted to rely on *Terry* to provide probable cause to make an arrest within a home.[5]  Moore does cite *Payton v. New York*, 445 U.S. 573, 586 (1980) for the proposition that warrantless seizures within the

---

[5] Moore has only claimed that his arrest was improper because it was made without probable cause, as opposed to a claim that it was improper because it was accomplished without a warrant.

home are unreasonable. However, the issue as framed by the Amended Complaint is the (alleged) absence of probable cause to make an arrest; Moore's Section 1983 claim does not mention the lack of a warrant or exigent circumstances. The Court's own research has uncovered no precedent from the United States Supreme Court, the United States Court of Appeals for the Eleventh Circuit, or the Florida Supreme Court that would inform a reasonable officer that the *Terry* stop that occurred in this case violated clearly established law. Accordingly, the Court finds that Moore has failed to meet his burden, and Pederson is entitled to qualified immunity.

### B. Pederson's Motion as to Moore's State Law Claims for False Arrest and Malicious Prosecution

Pederson argues that he is entitled to immunity as to the state law false arrest and malicious prosecution claims pursuant to Fla. Stat. § 768.28(9)(a).[6] (Doc. 42). That statute provides in pertinent part:

> No officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in tort … for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

It is undisputed that Pederson was acting within the scope of his employment when he made the arrest at issue here. Pederson argues that there is no evidence that he acted "in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property" so as to subject himself to personal tort liability consistent with Fla. Stat. §768.28(9). Moore argues that, as to the state law malicious prosecution claim, the absence of

---

[6] Pederson also argues that he is entitled to summary judgment on the state law false arrest claim because he had probable cause to arrest Moore for refusing to identify himself. As discussed *supra*, a disputed issue of material fact as to the location of the encounter precludes a determination that *Terry* applied and that Moore could therefore be arrested for refusing to provide I.D.

probable cause establishes legal malice, which is all he needs to establish to avoid summary judgment. However, the cases cited by Moore for this proposition address "malice" in the context of a malicious prosecution claim rather in the context of Fla. Stat. § 768.28(9). Stated differently, the cases cited by Moore may establish that legal malice is sufficient to prevail on a malicious prosecution claim under Florida law, but they do not establish that legal malice is sufficient to overcome the immunity from personal liability provided by Fla. Stat. § 768.28(9). Neither of Moore's cited cases involves a claim against an officer, employee, or agent of the state of Florida or mentions Fla. Stat. § 768.28(9). *See Alamo Rent-A-Car v. Mancusi*, 632 So. 2d 1352, 1357 (Fla. 1994) (plaintiff sued rental car company, only) *and Douglas v. United States,* 796 F.Supp.2d 1354 (M.D.Fla. 2011) (plaintiff sued federal government, only).

Moore also argues that a finding of actual malice for purposes of Fla. Stat. §768.28(9) is justified because he was arrested without a warrant, in his home, for a misdemeanor, in the absence of exigent circumstances. However, even assuming the encounter took place entirely in Moore's home, and therefore *Terry* did not apply, Pederson's misapprehension of the boundaries of *Terry* does not, on its own, constitute bad faith or malicious purpose so as to justify holding him personally liable in tort. Pederson is entitled to immunity on Moore's malicious prosecution claim.

The same holds true for Moore's state law false arrest claim. Moore argues that Fla. Stat. § 768.28(9) does not immunize police officers from liability for false arrest. However, in the case cited by Moore for this proposition, *Lester v. City of Tavares*, 603 So. 2d 18 (Fla. 5th DCA 1992), the appellate court (properly) rejected the argument that sovereign immunity barred *all* false arrest claims against the state and its agents because the decision to make an arrest was a discretionary government function. *Id.* at 18-19. *Lester* did not involve the immunity from individual liability provided by Fla. Stat. § 768.28(9), which is not based on any discretion possessed by the defendant

in regard to the decision at issue.[7]   Accordingly, the Court finds that Pederson is also entitled to immunity on Moore's state law false arrest claim.

### C.       Pederson's Motion as to the Intentional Infliction of Emotional Distress Claim

To state a claim for intentional infliction of emotional distress under Florida law, the plaintiff must prove (1) deliberate or reckless infliction of mental suffering; (2) by outrageous conduct; (3) which must have caused suffering; and (4) the suffering must have been severe. *Hart v. United States*, 894 F.2d 1539, 1548 (11th Cir. 1990) (citing *Metro. Life Ins. Co. v. McCarson*, 467 So.2d 277, 278-79 (Fla. 1985).   This is an objective question; the subjective response of the victim does not control.  *Liberty Mut. Ins. Co. v. Steadman,* 968 So.2d 592, 595 (Fla. 2d DCA 2007).

To qualify as outrageous, the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *McCarson*, 467 So.2d at 279.  Often, conduct which is independently tortuous, or even criminal, will not cross the high bar set for outrageousness.  *Id.* at 278-279; *see also Artubel v. Colonial Bank Group,* Case No. 8:08-cv-179-T-23MAP, 2008 WL 3411785 (M.D. Fla. Aug. 8, 2008) (false statements by a police detective and bank employee resulting in plaintiff's wrongful incarceration and prosecution were not outrageous conduct).

In the instant case, Moore was arrested while wearing only a towel, which he had around his waist when he answered the door.  (Doc. 50 at 135).  While Pederson was escorting Moore

---

[7] Although it appears Moore would have a viable false arrest claim against the County – or at least one that would not be barred under Fla. Stat. §768.28(9) – Moore's state law false arrest claim was only asserted against Pederson, individually.

to the police vehicle, the towel became undone, eventually dropping to the ground.  (Doc. 50 at 137).  By his own account, Moore had to walk approximately fifteen feet to the police vehicle while completely nude, which took about fifteen seconds.  (Doc. 50 at 137).  Moore estimated that six to eight unnamed individuals witnessed him walking to the police car.  (Doc. 50 at 136).  Moore was then transported to Seminole County jail.  When he arrived at the jail, Moore alleges that he was still completely naked, and people were laughing, and woman were putting their hands over their mouths.  (Doc. 50 at 138).  Pederson requested that a male officer process Moore, at Moore's own request.  (Doc. 50 at 138-39).  Thereafter, Moore was given a jump suit to wear.  (Doc. 50 at 138-39).

Assuming these facts to be true, Moore has not established a claim for intentional infliction of emotion distress, because he has not shown that Pederson's conduct was "beyond all possible bounds of decency."  Based on Moore's recollection, Pederson did not force Moore outside his home while he was completely naked; instead, the towel came undone while he was already being escorted to the vehicle.  While Pederson's alleged refusal to allow Moore to go back inside to get clothes (or to allow a third party to get clothes for him) may have been inconsiderate, it is at least arguably justified by safety concerns and certainly does not rise to high level of outrageousness required by Florida courts.

In addition, although Moore was observed in the nude by individuals outside his home and at the jail, there is no evidence that Pederson subjected him to public display for longer than necessary to escort him to the vehicle and to get him to processing at the jail.  Although being detained while nude for a comparatively brief period may be embarrassing, it is not sufficiently outrageous, absent some other grievous conduct, to support a claim for intentional infliction of

emotional distress.  *See, e.g., Hutchinson v. W. Virginia State Police*, 731 F. Supp. 2d 521, 549 (S.D.W. Va. 2010) (finding that it conduct outrageous, atrocious, utterly intolerable, for the police to force a woman to lay nude, in plain view of eleven men, for 30 to 45 minutes, while being sexually harassed).  Thus, the Court will grant Pederson's motion for summary judgment as to Moore's claim for intentional infliction of emotional distress.

> ### D.    Moore's Motion for Summary Judgment

In Moore's motion, he seeks summary judgment as to Count I of the Amended Complaint, which asserts his Section 1983 Fourth Amendment claim.  With the Court having determined that Pederson is entitled to qualified immunity on that claim, Moore's motion has become moot. Accordingly, Moore's motion will be denied.

## IV.    Conclusion

In consideration of the foregoing, it is hereby

**ORDERED** that the Motion for Summary Judgment (Doc. 42) filed by Defendant Kevin Pederson (Doc. 42) is **GRANTED**, and the Motion for Summary Judgment filed by the Plaintiff, Elvan Moore (Doc. 52), is **DENIED**.  The Clerk is directed to enter judgment in favor of Kevin Pederson and against Elvan Moore as to Count I, Count III, Count V, and Count VI.  As all claims of the Amended Complaint have now been resolved, the Clerk is also directed to close the file.

**DONE** and **ORDERED** in Orlando, Florida on August 29, 2014.

_____
**GREGORY A. PRESNELL**
**UNITED STATES DISTRICT JUDGE**